```
               UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS


COLONIAL WHOLESALE BEVERAGE,    )
                                )
          Plaintiff,            )
                                )
v.                              )   CIVIL ACTION
                                )   NO. 20-12136-DPW
LOCAL 59, INTERNATIONAL         )
BROTHERHOOD OF TEAMSTERS,       )
                                )
          Defendant.            )
_____)
```

### MEMORANDUM AND ORDER
### July 14, 2021

Before me are competing motions for summary judgment alternatively seeking to vacate or to confirm an arbitration award concerning the termination of a union member by his employer. The termination occurred after the union member tested positive for cocaine during a routine drug test. The Arbitrator found that there was no just cause for termination and ordered that the employee be reinstated with all the same benefits; but he expressly determined not to order backpay. I will uphold the award against the challenge by the employer because the Arbitrator's award draws its essence from the language of the collective bargaining agreement ("CBA") between the parties.

### I. BACKGROUND

In this setting, I am confined to the facts found by the

Arbitrator, "[e]ven if the arbitrator was seriously mistaken about some of the facts."  *El Dorado Tech. Servs., Inc.* v. *Union Gen. De Trabajadores de Puerto Rico*, 961 F.2d 317, 320 (1st Cir. 1992).  Accordingly, I present the facts as found in the Arbitrator's fully developed written decision.  *Steward Holy Family Hosp.* v. *Mass. Nurses Ass'n*, 932 F.3d 14, 15 (1st Cir. 2019).

### A.   *Factual Background*

Michael Jenney is a truck driver holding a commercial driver's license (CDL) and a member of the Defendant, Local 59 of the International Brotherhood of Teamsters ("Local 59").  He was employed by the Plaintiff, Colonial Wholesale Beverage ("Colonial") — a distributor of beer and wine — for approximately seventeen years and had no disciplinary record prior to his termination.

Colonial employees undergo random periodic drug testing. On August 16, 2019, Mr. Jenney was selected for and completed a periodic drug/alcohol screen, which came back positive for cocaine.  He was notified of the test result on August 20, 2019 and "readily acknowledged" that he had consumed cocaine at a house party at his home on Saturday, August 10, 2019.  Mr. Jenney had next reported to work the following Tuesday, August 13, 2019, and worked from the 13th to the 20th without incident. Mr. Jenney testified that his admitted involvement with cocaine

2

was "a one-time use based on a bad decision he made."  As a result of the positive drug screen, Colonial terminated Mr. Jenney on August 26, 2019; Mr. Jenney filed a grievance pursuant to the CBA on the same day.

Meanwhile, Mr. Jenney was evaluated by a licensed substance abuse professional ("SAP"), with whom he developed a "return to safety sensitive plan."  Mr. Jenney completed all steps of the plan, including abstinence from drugs and alcohol confirmed by urine testing, four hours of substance abuse meetings, and four AA/NA meetings.  Despite an all-clear by the SAP, Colonial continued to refuse to reinstate Mr. Jenney to his prior position.

A virtual arbitration hearing was held on October 6, 2020 before Lawrence T. Holden, Jr., as Arbitrator.  The issues to be decided were: "Did the Employer have just cause to terminate the employment of the grievant, Michael Jenney, on or about August 26, 2019? If not, what shall the remedy be?"

The Arbitrator carefully reviewed the language in the CBA, focusing on Article 14.1 (Discharge, Suspension) and Article 18.13 (Drugs and Post-Accident Drug Testing).  Article 14.1 prohibits Colonial from suspending any employee without just cause.  It requires that warning notice be given before discharge or suspension, except that no notice need be given when an employee is discharged for "dishonesty, drunkenness,

3

other criminal conduct, recklessness resulting in a serious accident while on duty, the carrying of unauthorized passengers, or any other serious matter." Article 18.13 prohibits employees from "engag[ing] in the unlawful use, purchase, or sale of illicit drugs."

The CBA requires that a dispute relating to discharge of an employee be resolved through arbitration. CBA Art. 14.1. It also notes the finality of any decision reached by an arbitrator. CBA Art. 25.2(b). The only limitation it provides is that such an arbitrator "shall not have the power to add to, subtract from or modify any of the terms of this Agreement or any agreements supplemental thereto." *Id.*

In reaching his determination of November 17, 2020 to order reinstatement, the Arbitrator reviewed pages 9 and 10 of the Employee Handbook signed by Mr. Jenney and entered into evidence without objection as supplementing the CBA. The Handbook prohibits "the unlawful manufacture, distribution, dispensation, possession or use of controlled substances *while on the job*." Handbook at 9 (emphasis added). It also forbids employees from "reporting to work or working while *under the influence of drugs or alcohol*." *Id.* (emphasis added). The Handbook states that the drug policy is a condition of employment and warns that an employee who violates the policy "is subject to disciplinary action, up to, and including **immediate** termination." *Id.* at 10.

4

Driving while intoxicated, either on or off duty, is elsewhere listed in the Handbook as a "situation warranting disciplinary action." *Id.* at 13. The Handbook includes the aspiration that Colonial "is committed to creating a drug-free and substance abuse-free atmosphere," but does not use the phrase "zero tolerance" or state that a violation of the drug or alcohol policy will always warrant termination. *Id.* at 9. The Handbook directs employees to the Human Resources Manager for any questions regarding drug testing. *Id.* at 10.

After reviewing these provisions of the CBA and the Handbook, the Arbitrator found that "the Employer has retained discretion, bounded by the contractual principle of just cause decision-making, as to the manner in which it will deal with violations of its substance abuse policy."

The Arbitrator then looked to specific practices of Colonial in calibrating the exercise of that discretion within the bounds of just cause decision-making under the CBA. He found, from evidence adduced, that on prior occasions Colonial had not terminated other employees who had in fact temporarily lost their CDL, when they were charged or convicted of driving under the influence while off-duty; instead, these employees were temporarily reassigned to non-driving positions. He also found that other (non-union) employees who operated company vehicles under the influence of alcohol were terminated. There

5

was no competent evidence adduced, however, that Mr. Jenney operated any Colonial vehicles while under the influence of the cocaine he consumed several days before returning to work following a long weekend.

Local 59 presented evidence that a company Human Resources department document, dated from 2011 and signed by the then Human Resources Director, had been posted on the employee bulletin board, setting forth a specific policy regarding termination of Colonial employees with CDL licenses who have had a positive drug test, provided that such a Colonial employee has "one chance to rehab with a certified substance abuse professional."  The posted HR document provided that once the SAP deems the employee free of drugs, that employee is allowed to return to work.[1]  This was the protocol Mr. Jenney undertook on his own, only to be rebuffed by Colonial.

The Arbitrator found that Mr. Jenney violated Article 18.3 of the CBA by testing positive for cocaine.  However, he also found, based on the language of the CBA and the Employee

---

[1] I note that witnesses called by Colonial all testified that they had never seen the document on the bulletin board.  The Arbitrator nevertheless found as a matter of fact that company policy was to offer an employee one opportunity to retain his job following the recommendation by a SAP.  I must accept that factual finding, although the subject of competing evidence adduced by the parties. *See El Dorado Tech. Servs., Inc.* v. *Union Gen. De Trabajadores de Puerto Rico*, 961 F.2d 317, 320 (1st Cir. 1992).

6

Handbook, that Colonial did not have a zero-tolerance policy for drug or alcohol offenses. Rather, he determined that Colonial violated its own policy by not allowing Mr. Jenney as a CDL driver employee to return to work after he completed the plan developed with his SAP. Consequently, the Arbitrator concluded that Colonial did not have just cause to terminate Mr. Jenney's employment. He ordered that Mr. Jenney be reinstated as an employee of Colonial and retain all his lost benefits, with the exception of back pay.

## B.   *Procedural History*

Colonial filed a complaint in this case on December 1, 2020, asserting jurisdiction under 29 U.S.C. § 185, seeking to vacate the Arbitrator's award; Local 59 answered and counterclaimed for confirmation of the award. Local 59 promptly moved for summary judgment for confirmation of the award. Colonial opposed that motion and filed a cross-motion for summary judgment to vacate the award. The motions turn on whether the award is contrary to the underlying CBA.

## II. STANDARD OF REVIEW

As a general matter, a movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if a reasonable [fact finder] could resolve the point

in favor of the nonmoving party.  A fact is 'material' if its existence or nonexistence has the potential to change the outcome of the suit."  *Tropigas de Puerto Rico, Inc.* v. *Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (internal citations omitted).

In evaluating a motion for summary judgment, a court "must construe the record in the light most favorable to the nonmovant and resolv[e] all reasonable inferences in that party's favor while safely ignoring conclusory allegations, improbable inferences, and unsupported speculation."  *Collins* v. *University of New Hampshire*, 664 F.3d 8, 14 (1st Cir. 2011) (internal citation omitted).  To oppose a motion for summary judgment successfully, "the nonmoving party must set forth specific facts showing that there is a genuine issue for [fact finding resolution]."  *Barry* v. *Noran*, 661 F.3d 696, 703 (1st Cir. 2011) (internal citation omitted).

In evaluating summary judgment motions in the labor arbitration context, I begin with the principle that a federal court's review of an arbitration award is "extremely narrow and exceedingly deferential."  *See Ramos-Santiago* v. *United Parcel Serv.*, 524 F.3d 120, 123 (1st Cir. 2008) (citations omitted).  The First Circuit has repeatedly noted that "[a]rbitral awards are nearly impervious to judicial oversight."  *Doral Fin. Corp.* v. *Garcia-Velez*, 725 F.3d 27, 31 (1st Cir. 2013) (quoting

*Teamsters Loc. Union No. 42* v. *Supervalu, Inc.*, 212 F.3d 59, 61 (1st Cir. 2000)).

### A. The Arbitrator's Award

An arbitration award settling a labor dispute under a collective bargaining agreement "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38 (1987); *see United Steelworkers of Am.* v. *Enter. Wheel & Car Corp.*, 363 U.S. 591, 597 (1960). This standard is met "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Misco*, 484 U.S. at 38.

Limited judicial review of arbitral decisions respects the determination of the parties to resolve disputes through arbitration; one party cannot change its mind about arbitral dispute resolution simply because it does not like the outcome. *See Doral*, 725 F.3d at 31; *Ramos-Santiago*, 524 F.3d at 123. Reviewing labor arbitration awards beyond the long-settled constraints of "extremely narrow and exceedingly deferential" consideration would undermine federal policy that encourages labor dispute resolution through arbitration. *See Misco*, 484 U.S. at 36-37.

A federal court may vacate an arbitration award that

represents a manifest disregard of the law.[2]  *See Mountain Valley Prop., Inc.* v. *Applied Risk Servs., Inc.*, 863 F.3d 90, 94 (1st Cir. 2017).  A manifest disregard is established when the arbitration award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact."  *Id.* (quoting *McCarthy* v. *Citigroup Glob. Mkts., Inc.*, 463 F.3d 87, 91 (1st Cir. 2006)); *see also Loc. 1445, United Food & Com. Workers Int'l Union, AFL-CIO* v. *Stop & Shop Cos.*, 776 F.2d 19, 21 (1st Cir. 1985); *Bettencourt* v. *Bos. Edison Co.*, 560 F.2d 1045, 1050 (1st Cir. 1977).  Importantly, the demanding manifest disregard standard means that an arbitration decision must be upheld even when the court

---

[2] While jurisdiction in this dispute is founded on Section 301, 29 U.S.C. § 185, I note that Section 10(a) of the Federal Arbitration Act sets out a collection of circumstances justifying the vacatur of an arbitration award by a federal court, but none of these is at issue here.  The long-standing common law doctrine of manifest disregard of the law has provided a "very limited" additional way for courts to review an arbitration award in the absence of a specific exception provided by § 10(a).  *See Mountain Valley Prop., Inc.* v. *Applied Risk Servs., Inc.*, 863 F.3d 90, 94 (1st Cir. 2017).  The First Circuit has not yet decided if this doctrine survives *Hall Street Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576 (2008), which the First Circuit observed "casts doubt on the continued existence of manifest disregard as a ground for vacatur."  *See generally Mountain Valley*, 863 F.3d at 94-95.

10

expresses "skepticism about the merits of the arbitrator's rationale." *Keebler Co. v. Truck Drivers, Loc. 170*, 247 F.3d 8, 11 (1st Cir. 2001). As discussed in this Memoranda, there is no basis to entertain skepticism about the Arbitrator's thoughtfully crafted written decision here.

I first ask whether the arbitration award drew its essence from the CBA. I find that it did. The Arbitrator reviewed the language of both the CBA and the supplementary Employee Handbook. He found that the positive drug test did constitute a violation of Article 18.13 of the CBA, but that based on the language of the Handbook — allowing discipline "up to, and including ***immediate*** termination" — also found this did not *require* automatic termination. The Arbitrator considered the language in both documents but could not find any language supporting Colonial's purported zero tolerance policy.

Once the Arbitrator determined that Colonial retained some discretion in addressing a positive drug test situation — but not discretion categorically to impose immediate termination — he looked to the company's practices to determine whether there was just cause. Finding evidence of other employees who were not terminated after similar or even more serious misconduct in more aggravated circumstances and a written policy providing for one additional chance for CDL driver employees after a failed drug test, the Arbitrator concluded that just cause was lacking.

11

I find that this well-reasoned analysis is firmly grounded in the text of the CBA and the Employee Handbook and in the company's practices and protocols.

Colonial contends that because the Arbitrator acknowledged that it retained discretion under the CBA relating to discipline, it must follow that its ultimate decision to terminate was justified and that in deciding otherwise the Arbitrator "dispense[d] his own brand of industrial justice." This argument is frivolous. In mounting that argument, Colonial maintains that the Arbitrator ignored the plain language of the CBA and impermissibly added to or modified the agreement by referencing the employee bulletin board policy. But it is Colonial that ignores the CBA as implemented.

The CBA prohibits the discharge of any employee *without just cause*. The Arbitrator correctly noted that Colonial "retained discretion, bounded by the contractual principle of just cause decision-making." His attention to the examples of other similarly situated employees and the documented second-chance policy for CDL driver employees was simply a way of determining the scope of that discretion in the context of just cause decision-making in circumstances where an employee had not been found to have been working "under the influence of drugs"[3]

---

[3] Colonial repeatedly refers to Mr. Jenney as having been "under the influence" at work. I note that the Arbitrator found that

12

and followed the company protocol that afforded an employee following a positive drug test "one chance to rehab with a certified substance abuse professional."  This was not an impermissible addition to the terms of the agreement; it was a careful titration of its essence.

To be sure, the CBA limits the power of the arbitrator "to add to, subtract from or modify any of the terms of this Agreement or any agreements supplemental thereto."  It does not prohibit using other evidence to fill in the gaps of existing contractual language.  *See Kraft Foods* v. *Office & Pro. Employs. Int'l Union*, 203 F.3d 98, 101 & n.1 (1st Cir. 2000) (noting that even courts taking a restrictive view of such "no-modification" clauses allow arbitrators to fill in gaps in an agreement).  That is what the Arbitrator properly did here.

The Colonial/Local 59 CBA does not establish limitations on the remedies an arbitrator may impose upon an employer without the "sole right" to discharge employees.  In this, the award before me differs from that addressed in *S.D. Warren Co., a Div. of Scott Paper Co.* v. *United Paperworkers' Int'l Union, AFL-CIO, Loc. 1069*, 845 F.2d 3 (1st Cir. 1988).  In *S.D. Warren*, the court vacated an arbitration award when the collective bargaining agreement gave the company the "sole right" to

---

"[n]o evidence whatsoever was offered" supporting this position.

13

discharge employees for cause and the arbitrator reversed the termination decision made by the company. *Id.* at 8.  By contrast, the CBA here does not grant Colonial such a sole right to discharge employees.  Certainly, Article 6.5 of the CBA does confer sole discretion on Colonial to determine, for purposes of classification as a casual employee, if an employee has a satisfactory driving record.  But the Colonial/Local 59 CBA did not impose any other limitations on the scope of the Arbitrator's authority or ability to order specific remedies.  The termination decision at issue here had nothing to do with Mr. Jenney's driving record or classification as a casual employee.  The "severe conclusion" of vacatur reached in *S.D. Warren* is thus inappropriate here, where the Arbitrator was empowered to determine whether an employee had been terminated without just cause.

Colonial puts great weight on the list of offenses in Article 14.1 for which a warning is not required before termination.  It contends that a positive drug test for an off-duty incident falls within the catch-all category of "any other serious matter" and therefore is grounds for immediate discharge.  But even if such a drug test does fall within the catch-all category, that section of the CBA cannot sensibly be read to mean that the listed offenses justify immediate termination in every situation.  In *Keebler*, contract language

14

allowing termination without warning for certain conduct — there gross insubordination — did not mean that gross insubordination constituted just cause for termination in every case; rather, an employee engaged in gross insubordination could be terminated without warning only when the company determined there was just cause. 247 F.3d at 14. The language of the CBA at issue in this dispute is almost identical to the one at issue in *Keebler*. The offenses listed, including "any other serious matter," do not trigger immediate termination, but instead allow Colonial to terminate an employee without warning for a serious offense, but only when there is also just cause for that termination. And the Arbitrator here supportably found, drawing his decision from the essence of the Colonial/Local 59 CBA (as CBAs have been interpreted by the courts), that there was no just cause here.

By prohibiting Colonial from discharging "*any employee* without just cause" (emphasis added), the CBA does not explicitly except any offenses from the just cause requirement. The Article 14 list of no-warning offenses thus does not support Colonial's argument. Indeed, deploying the conventional canon of contractual construction *expressio unius est exclusio alterius* as a background rule directs precisely the opposite conclusion. Because these offenses were singled out as not requiring a warning but remain subject to just cause decision-making, it is evident that incidents involving even those

15

offenses have been included in the just cause language of the CBA fairly construed.

The Arbitrator found that there was a violation of the CBA sufficient to justify some level of discipline, but not a violation sufficient to provide just cause for termination. Similar awards have consistently been upheld by the First Circuit. *See Keebler*, 247 F.3d at 13; *Steward Holy Family Hosp.* v. *Mass. Nurses Ass'n*, 932 F.3d 14, 20-21 (1st Cir. 2019); *Bos. Med. Ctr.* v. *Serv. Empl. Int'l Union, Loc. 285*, 260 F.3d 16, 22 (1st Cir. 2001).[4] Separately stated, none of the requirements for manifest disregard, *see supra* note 2 and accompanying text, which remains a standard for evaluating labor arbitration awards under 29 U.S.C. § 185 despite any lingering concerns about the separate reach of the Federal Arbitration Act following *Hall Street Associates*, have been met here, as the Arbitrator's well-reasoned construction of the parties' CBA makes clear. Following the narrow standard under which I must review an

---

[4] Vacatur cases relied upon by Colonial involving separate bases for employee dismissal are thus inapposite here. *See, e.g.*, *Poland Spring Corp.* v. *United Food & Com. Workers Int'l Union, AFL-CIO-CLC, Loc. 1445*, 314 F.3d 29, 35-36 & n.2 (1st Cir. 2002) (upholding vacatur of arbitration award ordering reinstatement where agreement provided that just cause "shall include" insubordination); *Ga.-Pac. Corp.* v. *Loc. 27, United Paperworkers Int'l Union*, 864 F.2d 940, 944-45 (1st Cir. 1988) (vacating arbitration award ordering reinstatement where agreement allowed dismissal on the basis of "two *independent* justifications for dismissal," either just cause *or* list of specific offenses (emphasis in original)).

arbitration award, I find no reason to vacate the decision.

## B. Attorneys' Fees

Local 59 contends that it is entitled to attorneys' fees because this lawsuit brought by Colonial to vacate the arbitration award is irrational and frivolous. I agree.

The First Circuit has authorized the award of attorneys' fees in arbitration cases where the party seeking to vacate the arbitration award acts in a way that is "frivolous, unreasonable, or without foundation." *Loc. 285, Serv. Empl. Int'l Union, AFL-CIO* v. *Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 737-38, 742 (1st Cir. 1995) (quoting *Wash. Hosp. Ctr.* v. *Serv. Empl. Int'l Union*, 746 F.2d 1503, 1510 (D.C. Cir. 1984)). I recognize, nevertheless, that the "line between frivolous arguments and merely unpersuasive ones is fine," and even though I have determined Colonial ultimately unsuccessful, I must consider whether its contention that the Arbitrator "impermissibly modified, rather than interpreted the CBA was 'at least colorable.'" *N. New Eng. Tel. Operations LLC* v. *Loc. 2327, Int'l Brotherhood of Elec. Workers, AFL-CIO*, 735 F.3d 15, 25 (1st Cir. 2013) (quoting *Local 2322, Int'l Brotherhood of Elec. Workers* v. *Verizon New Eng., Inc.*, 464 F.3d 93, 100 (1st Cir. 2006)). I find, however, that this was not even a colorable argument and am prepared to award reasonable attorneys' fees to Local 59.

The First Circuit has "long lamented the 'exasperating frequency' with which arbitration awards are appealed." *Id.* (quoting *Posadas de P.R. Assocs.* v. *Asociación de Empleados de Casino de P.R.*, 821 F.2d 60, 61 (1st Cir. 1987)).  If Colonial's contention is colorable here, where the Arbitrator provided a fully reasoned decision fairly interpreting numerous provisions of the CBA and properly associated supplementary evidence, there cannot be said to be any discernable line between frivolous arguments and those merely unpersuasive when courts review the outcome of a well-grounded labor arbitration award.  Such a result would be contrary to congressional policy, which "reflect[s] a decided preference for private settlement of labor disputes without the intervention of government." *Misco*, 484 U.S. at 37.  Because parties to a CBA have contracted to resolve labor disputes through the arbitration process in order to conserve resources, "they are bound by the arbitrator's decision," *Ramos-Santiago*, 524 F.3d at 123, and should not feel free to bring a frivolous suit to vacate the award without consequences.  Consequences in the appropriate case include reasonable attorneys' fees for the time spent contesting that initiative.  It does not require the drawing of fine distinctions to determine that Colonial's arguments here are simply pretexts, without meaningful factual or legal bases, improperly designed to increase the transactional costs for

18

Local 59 to pursue its contractual right to enforce the CBA's arbitration provisions.  This is an appropriate case to impose attorneys' fees.  Consequently, I will direct Local 59 to make a submission justifying a particularized request for its fees accrued to date in this action.

### III. CONCLUSION

For the reasons set forth above, I GRANT the motion [Dkt. No. 7] of Local 59 for summary judgment confirming the Arbitrator's award; I correlatively DENY the cross-motion [Dkt. No. 9] of Colonial for summary judgment vacating that Award.

Accordingly,

1.  Colonial shall reinstate Michael Jenney to his employment as of November 17, 2020, making him whole for all benefits lost, except for back pay between his improper termination date (August 26, 2019) and the date the Arbitrator ordered reinstatement (November 17, 2020).

2.  Local 59 is directed to make a submission on or before July 21, 2021, detailing and supporting the precise attorneys' fees it contends it is entitled to in this proceeding.  Colonial shall respond to any such submission on or before August 2, 2021.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE